UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THE UNITED STATES OF AMERICA,

|  |  |
|---|---|
| v. | **Hon. Hugh B. Scott** |
|  | 04CR196 |
| ROBERT RHODES, | **Report** |
|  | **&** |
| Defendant. | **Recommendation** |

APPEARANCES:   Assistant United States Attorney Martin J. Littlefield, for the government
Steven M. Cohen, Esq., for defendant

Before the Court is defendant's omnibus motion (Docket No. 12).  For convenience, the

subparts of the motion will be separately indicated.  That motion seeks (among other forms of

relief) dismissal of the indictment (in general and on the ground of selective enforcement, Docket

Nos. 12-8, 12-9), and defendant's separate motion to suppress evidence seized pursuant to a

warrant (Docket No. 20).  The motions were argued on November 5, 2004 (Docket No. 22), and,

following additional submissions by the parties as to a certain Equal Employment Opportunity

complaint discussed in the defense argument (Docket No. 23 (defendant's submission); Docket

No. 24 (government's response)), were submitted on December 15, 2004.  This matter was

referred to the undersigned to hear and determine pretrial matters and to submit proposed

findings of fact and recommendations for disposition of any motions (Docket No. 11).

Defendant also seeks various discovery and disclosure.  This Report & Recommendation will

consider the suppression motion and the motion to dismiss the indictment; a separate Order will

consider the discovery motions (see Docket No. 12-1, 12-2, 12-3, 12-4, 12-5, 12-6, 12-7).

**BACKGROUND**

The Criminal Complaint (Docket No. 1) alleged that, on July 21, 2004, during the 4 pm to 12 midnight shift on the Rainbow Bridge defendant, Robert Rhodes, an officer with the Bureau of Customs and Border Protection of the Department of Homeland Security, allegedly used pepper spray to subdue a subject ("subject"), a Chinese national. (Docket No. 1, ¶ 4.) Earlier, a black male pedestrian entered at the bridge with 3-4 pounds of marijuana. Defendant is believed to have thought that the pepper sprayed subject was involved with the pedestrian in drug smuggling (id. ¶5). Supervisory Customs and Border Protection Officer Martin Mahady reported that two other Customs and Border Protection Officers stated that they saw defendant kick the subject in the head while subduing her (id. ¶¶ 5, 4). In defendant's written statement to the Department of Homeland Security investigator, he stated that the subject swung her arms at him, then he subdued her with pepper spray, and that she scratched him (see id. ¶ 8). A witness reported to that Homeland Security investigator that she saw defendant throw the subject against a wall, then strike her head with his knee three times. That witness then saw defendant allegedly grasp the subject's hair in both fists and hit her head against the ground twice. (Id. ¶ 11.) The investigator interviewed the subject. Through a friend who interpreted, the subject stated that she was sprayed twice, kicked at least twice, and struck repeatedly about the head (id.).

*Charges*

On July 22, 2004, defendant was charged in the Criminal Complaint with violating 18 U.S.C. § 242, allegedly depriving the above subject of her rights, privileges and immunities. (Docket No. 1.) On August 11, 2004, the federal Grand Jury returned a single-count indictment against the defendant (Docket No. 3). The indictment alleges that "On or about July 21, 2004, in

the Western District of New York, the defendant, Robert Rhodes, an officer with the Bureau of Customs and Border Protection of the Department of Homeland Security, while acting under color of law, did strike and hit Yan Zhao [the subject] with his knee and did forcibly drive her head into contact with the pavement, resulting in bodily injury to Yan Zhao, and thereby did willfully deprive her of the right to be secured and protected by the Constitution and laws of the United States to be free from the use of unreasonable force by one acting under color of law.  All in violation of Title 18 United States Code, Section 242." (Docket No. 3.)

## DISCUSSION

I.   Dismissal of Indictment

Defendant argues that the Indictment did not allege that the subject was deprived of any right or privilege secured to her under the United States Constitution or laws (Docket No. 12-8, ¶¶ 3, 5).  He argues that the subject was subdued after failing to stop upon the lawful command of a Customs and Border Protection officer (id. ¶ 4).  He also claims that the indictment contains immaterial, irrelevant, prejudicial and inflammatory allegations (id. ¶ 6) and that the allegations are so vague that defendant may be subject to future prosecution for the same offense (id. ¶ 7).

The government contends that the motion is unclear as to its basis, since the Indictment here recites the elements of the offense, states the essential facts constituting the offense, and cites the statute violated (Docket No. 15, ¶ 28, at 13).  The Indictment here charges a law enforcement officer with misuse of his power to restrain an individual as a "'serious intrusion upon the sanctity of the person.'" (Id. at 14, quoting United States v. Langer, 958 F.2d 522, 524 (2d Cir. 1992)).  See Terry v. Ohio, 392 U.S. 1 (1968).  Unlawful detention, Langer, supra, or

3

assault upon a detainee as alleged here in the Indictment is deemed a violation of 18 U.S.C. § 242, United States v. Schatzle, 901 F.2d 252, 257 (2d Cir. 1990).

Defendant has failed to make a prima facie showing how the indictment is vague. Defendant's motion to dismiss the indictment should be **denied**.

II.     Dismissal of Indictment for Selective Enforcement

Defendant argues that he was singled out for prosecution from the two or three other (unnamed) border officers who were involved in apprehending the subject, presumably because defendant is a homosexual. (Docket No. 12-9, ¶¶ 4, 9.) He states that eleven Customs and Border Protection officers were involved in the subject's apprehension, but he was the only one charged. (Id. ¶ 2.) He then cites media reports from the subject that claim that she was battered by more than one Customs and Border Protection officer (id. ¶ 3). He claims that his sexual orientation was known to his supervisors at the Department of Homeland Security, hence the prosecution was aware (somehow) of his sexual orientation but nevertheless prosecutes him. (Docket No. 12-9, ¶ 5.)

During argument of his motion on November 5, 2004, defendant argued that the government was aware of his homosexuality from a favorable determination of an earlier employment grievance which concerned his homosexuality by the Equal Employment Opportunity Commission. See also Docket No. 22. One of the documents defense counsel submitted was a listing of remedies including apologies from various Customs and Border Protection officials to defendant, which defendant argues was the favorable determination and notice that the government had of his sexual orientation. Defense counsel later furnished an affidavit and supporting exhibits, however, which showed (in incredible and excruciating detail

for the defense in a criminal prosecution) that the EEO matter was not determined in defendant's favor at this time, but in fact was still pending and no finding has yet been made. Docket No. 23, Def. Atty. Aff. ¶¶ 4-42. Counsel admits the error, stating that "it appears that I was in error in stating at oral argument that the Remedies Requested were granted, as the claim it was attached to was dismissed by the EEOC. In my mind I had mistaken the EEO complaint, which was acted upon favorably, for the EEOC complaint, which was dismissed." Id. ¶ 44. Defense counsel then conclusively states that the prosecution was aware of defendant's sexual orientation from this complaint, "That Mr. [Michael] D'Ambrosio [Director of Field Operations, Bureau of Customs and Border Protection, Docket No. 23, Def. Atty. Aff. ¶ 9] became aware of the EEO complaint and that these complaints were common knowledge at the Department of Homeland Security and these facts were readily available to the Prosecution upon a cursory investigation." Docket No. 23, Def. Atty. Aff. ¶ 45. Thus, defendant attributes notice of his homosexuality to his EEO complaint and the action upon that complaint within the Department of Homeland Security's personnel offices.

The government argues that the prosecution was not aware of defendant's sexual orientation and, at oral argument, the prosecutor disclaimed any bias toward defendant due to his sexual orientation. (Docket No. 17, Gov't Atty. Aff.; Docket No. 15, Gov't Response ¶ 30, at 17.) The government argues that defendant's sexual orientation is irrelevant to this prosecution. (Docket No. 15, ¶ 30.) In response to defendant's supplemental affidavit (Docket No. 23), the government contends that defendant has not made a showing of persons similarly situated to him that were not prosecuted. The government also argues that defendant also failed to show that the

Department of Justice (in making the decision to prosecute) or the grand jury (in voting to indict defendant) had any knowledge of defendant's sexual orientation (Docket No. 24, at 3).

During argument, defendant produced in open Court highlighted copies of three opinions in support of his position, rather than citing and analyzing these cases in his moving papers or in a supplemental supporting memorandum of law. One case, United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir. 1974), was quoted in defendant's motion (Docket No. 12-9, ¶ 6; see also Docket No. 15, Gov't's Response ¶ 30, at 16; Docket No. 24, Gov't Response to Def.'s Supp'al Aff. at 2) for the two-part standard for a defendant to establish that the prosecution was brought selectively against a defendant on improperly discriminatory grounds. The other cases were presented for the first time as submissions handed up to the bench. The better practice is to include these authorities and supporting argument in a memorandum or other written submission (cf. W.D.N.Y. Local Cr. R. 49.1(c)), even seeking an adjournment to file such a memorandum, rather than handing up highlighted copies of cases printed from a computerized legal retrieval service during oral argument. Nevertheless, the Court considered defendant's proffered authority. Berrios requires a defendant claiming selective prosecution to show that other similarly situated persons were not prosecuted while defendant was and that the government's discriminatory selection of defendant was invidious or in bad faith or based upon impermissible considerations (such as race, religion or exercise of constitutional rights), 501 F.2d at 1211. That case, and United States v. Falk, 479 F.2d 616, 618 (7th Cir. 1973) (copy provided by defendant), arose from the Vietnam/Watergate era involving allegedly politically motivated prosecutions; in Falk, the defendant was prosecuted for failing to process his draft registration card, and in

Berrios, a pro-McGovern union leader was indicted under a rarely used provision in the labor code against recently convicted persons serving as union officers.

In defendant's third case, Flores v. Morgan Hill Unified School District, 324 F.3d 1130, 1137 (9th Cir. 2003), defendant appears to argue that homosexuality is an impermissible consideration in selective prosecution. But this civil case defendant cites, Flores, involved high school students who sued the district when it failed to respond to their complaints of anti-homosexual harassment. That case did not involve a criminal prosecution, a selective enforcement claim, or a prosecution allegedly motivated by the defendant's sexual orientation. The plaintiffs there alleged anti-gay harassment because they were or were perceived by others as being gay. Flores, supra, 324 F.3d at 1132. Defendant does not cite a criminal prosecution where a defendant was found to have been selectively prosecuted for his or her sexual orientation. Cf. Borland v. United States, 125 F. Supp. 2d 212, 217-18 (E.D. Mich. 2000) (rejecting selective enforcement claim in prosecuting plaintiff for tax offense due to plaintiff's homosexuality); United States v. Neufeld, 949 F. Supp. 555, 557 (S.D. Ohio 1996) (court denied motion to dismiss on selective enforcement grounds Medicaid kickback prosecution against two homosexuals); but cf. Stemler v. City of Florence, 126 F.3d 856, 873, 874 (6th Cir. 1997) (civil rights claim for selective enforcement upheld by plaintiff alleging arrest for drunk driving due to her being perceived as a lesbian by defendant city's police officers, where plaintiff alleged defendant officers' animus to her due to her sexual orientation).

Factually, this action is readily distinguishable from the authorities presented by defendant. Under the Berrios standard, defendant fails to show that he was singled out or that the alleged discrimination was invidious or in bad faith. As the government argues, defendant's

conduct in subduing the subject here was materially different from the other border officers, hence no one else was similarly situated. Defendant fails to identify those similarly situated to him who were ought to have been prosecuted.

As for the impermissible consideration, assuming this Circuit adopts homosexuality as an impermissible consideration in prosecution, cf. Borland, supra, 125 F. Supp. 2d at 873; Stemler, supra, 126 F.3d at 873, the prosecutor here denies knowing defendant's sexual orientation prior to his declarations after being indicted (Docket No. 17). Defendant has not introduced proof of how knowledge of his EEO complaint (the information he cites as the source of the government's knowledge of his sexual orientation) was readily available--involving a personnel matter--or relevant to the underlying prosecution. The Department of Homeland Security agents and investigators involved in this prosecution are not named in defense counsel's affidavit which outlined those within that department who presumably knew of defendant's open homosexuality. He offers no proof that the Director of Field Operations, who also purportedly knew of defendant's sexual preference, was involved in the decision to prosecute him. Defendant fails to establish the prosecution's knowledge of defendant's sexual orientation (as opposed to his employer's knowledge) to justify his selective enforcement contention. He does not claim, for example, that the supervisors at the Department of Homeland Security encouraged defendant's prosecution or, if they did, that such encouragement was motivated by their knowledge of his homosexuality. However open defendant's homosexuality was (either in general or in his workplace), defendant fails to connect that knowledge of that fact to his present prosecution to make this prosecution impermissibly selective.

Therefore, defendant's motion to dismiss for selective enforcement should be **denied**.

III.	Suppression of Evidence

Defendant argues that the search warrant did not state the time it was issued and did not include the supporting affidavit (Docket No. 20). The government contends that the search warrant was listed in the government's discovery list, including the supporting affidavit, that defense counsel had reviewed. That warrant also was not sealed and thus was available to defendant in the Court's records. (Docket No. 21, Gov't Aff. Responding to Suppression Motion ¶¶ 4-7.) The supporting affidavit was the same attached to the Criminal Complaint. Since defendant has access to the warrant and its supporting affidavit in the government's production as well as open Court records, defendant's motion should be **denied**.

## CONCLUSION

For the reasons stated above, it recommended that defendant Robert Rhodes' motion to dismiss the indictment (Docket No. 12-8) should be **denied** and his motion to dismiss the indictment for selective enforcement (Docket No. 12-9) also should be **denied**. Defendant's motion to suppress (Docket No. 20) should be **denied**.


Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report and Recommendations to all parties.

**ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIC TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provision of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

                                          s/HBS
                               Hon. Hugh B. Scott
                        United States Magistrate Judge

Dated: Buffalo, New York
         January 10, 2005